**Franklyn HYPOLITE, Petitioner,**

v.

**J. Scott BLACKMAN, INS District Director, Respondent.**

**No. CIV. A. 1:CV–99–0549.**

United States District Court,
M.D. Pennsylvania.

July 13, 1999.

Memorandum on Denial of Reconsideration Aug. 24, 1999.

Sandra L. Greene, York, PA, for Franklyn Hypolite, petitioner.

Kate L. Mershimer, U.S. Attorneys Office, Harrisburg, PA, for J. Scott Blackman, INS District Director, respondent.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Petitioner Franklyn Hypolite is a citizen of Trinidad. He has resided in the United States since 1984, but has never attained permanent resident status. The Immigration and Naturalization Service (INS) has issued an order of removal against him on the ground that he is an alien convicted of an aggravated felony. Currently detained at York County Prison preparatory to his deportation from the United States, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. He accompanied the petition with a motion for temporary restraining order (TRO) and stay of deportation.

On April 7, 1999, we granted the TRO and enjoined the Respondent, J. Scott Blackman, the INS's District Director for the Philadelphia Region, from deporting the Petitioner until we could consider the merits of the habeas petition.

In the petition, the only claim Hypolite made was that the INS had not granted him his statutory right to seek a waiver of his deportation based on hardship to his family. The Respondent filed a motion to dismiss, arguing that we lack jurisdiction to consider the petition or to enjoin Petitioner's removal, that Hypolite cannot satisfy the statutory requirements to obtain an injunction against his deportation, and that as an alien convicted of an aggravated felony he is ineligible to be considered for a hardship waiver.

In opposition to the motion to dismiss, Petitioner raised four new claims. He made a second argument based on the INS's purported failure to follow proper statutory procedure. The new statutory argument is that the INS failed to follow the procedure required by 8 U.S.C. § 1228(a), Immigration and Nationalization Act (INA) § 238(a), rather than the procedure actually used, the one set forth in 8 U.S.C. § 1228(b), INA § 238(b). Next, he argued that Congress had not authorized the section 1228(b) procedure.

He made two constitutional arguments. First, he contended that the section 1228(b) procedure violates procedural due process by not providing an impartial or competent adjudicator and by not allowing the alien to testify in person. Second, he contended that the procedure violates equal protection because some aliens, deportable on the same basis as the Petitioner, may be placed in proceedings allowing them to seek discretionary relief while the procedure applied to Petitioner precluded him from doing so.

The Respondent filed no reply brief. Because the matter is obviously of great importance to the Petitioner, we will consider all arguments he raises.

## II. *Background.*

The Petitioner was born in Trinidad in 1963 and entered the United States on a tourist visa in 1984. He married a United States citizen in 1996, (Pet'r Ex. 4; Resp't Ex. 6), and now has a child who is also a United States citizen.

Hypolite is not a permanent resident alien although he did take steps toward that status after his marriage. In or about May 1997, he obtained an immigrant visa, (Pet'r Ex. 3; Resp't Ex. 3, ¶ 2), apparently a step toward obtaining permanent resident status, but the process stopped there, evidently because he failed to submit the appropriate application.

Petitioner pleaded guilty in the Eastern District of New York to conspiracy to import heroin and possess heroin with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 952(a). In September 1998, he was sentenced to a term of imprisonment for six months and of home confinement for six months.

On February 2, 1999, while Petitioner was incarcerated at FCI–Loretto, Pennsylvania, the INS served him with a Notice of Intent to Issue a Final Administrative Removal Order ("Notice"). (Resp't Ex. 5.) The Notice informed Hypolite of the following. First, he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), INA § 237(a)(2)(A)(iii), because he was not a permanent resident alien and because his conviction constituted an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include trafficking in controlled substances). Second, the INS intended to enter a removal order under the procedure authorized by 8 U.S.C. § 1228(b), INS § 238(b). The Notice identified this as the "expedited administrative removal proceedings," one of the 1996 changes to the INA. Third, in accord with this procedure, Hypolite's case

would not be decided by a hearing before an immigration judge. However, Hypolite could retain counsel to represent him and file written opposition to removal. Hypolite could also request an opportunity to examine the government's evidence and seek judicial relief from any final decision within 14 days.

Hypolite responded by submitting an affidavit in which he acknowledged his criminal conviction and stated that his wife had applied for his permanent residency in December 1996. (Resp't Ex. 6.) He also requested a hearing before an immigration judge.

On March 16, 1999, the INS issued a Final Administrative Removal Order ("Order"). (Resp't Ex. 7.) In accord with section 1228(b) procedure, the Order was issued by a "deciding service officer," not an immigration judge. In his Order, the officer set forth the following factual findings and conclusions of law. Hypolite was neither a citizen of the United State nor a permanent resident alien. He was convicted of an aggravated felony. Therefore, by "clear, convincing and unequivocal evidence," Hypolite was a deportable alien pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and his removal from the United States to Trinidad or some other appropriate country was ordered. Additionally, the officer decided Hypolite was ineligible for any discretionary relief from the Attorney General.

Hypolite had fourteen days to apply to the Third Circuit for judicial review of the March 16, 1999 Order, 8 U.S.C. § 1228(b)(3), but did not do so. Instead, he pursued this 2241 petition.

## III. *Discussion.*

### A. *Jurisdiction.*

At the threshold, we address the Respondent's jurisdictional argument. The Respondent contends that the Supreme Court's recent decision in *Reno v. American–Arab Anti–Discrimination*

*Committee,* —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), makes clear that judicial review of the removal order is precluded by 8 U.S.C. § 1252(g), INA § 242(g). Section 1252(g) provides that: "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

In *American–Arab,* eight aliens filed a civil suit against the Attorney General, seeking an injunction against deportation proceedings initiated against them by asserting that the proceedings were politically motivated. The Supreme Court held that section 1252(g) precluded the suit since the section specifically prohibited judicial relief against the Attorney General's decision to commence proceedings, except such judicial relief authorized by the INA.

The Respondent thus maintains that *American–Arab* precludes us from exercising jurisdiction over Hypolite's habeas petition since the petition seeks review of the INS's removal order, one of the other two discrete INS actions mentioned in section 1252(g).

We reject the Respondent's argument. As the petitioner points out, in *Sandoval v. Reno,* 166 F.3d 225, 231 (3d Cir.1999), the Third Circuit held that after the 1996 amendments to the INA district courts retained the jurisdiction they previously had under 28 U.S.C. § 2241 to entertain the type of statutory and constitutional challenges Hypolite makes to his deportation.

In *Sandoval,* the INS had ordered the alien to be deported because of a drug offense and had not exercised its authority under 8 U.S.C. § 1182(c) to grant discretionary relief because the 1996 amendments to the INA had precluded it. The alien filed a habeas petition in district court, contending that the elimination of section 1182(c) discretionary review did not apply to cases like his, pending at the time of the 1996 amendments, and that the elimination of discretionary review violated equal protection.

The government argued that section 1252(g), INA § 242(g), eliminated habeas jurisdiction in deportation cases. The Third Circuit rejected the argument, reasoning that removal of habeas jurisdiction requires an express statement by Congress, and the 1996 amendments did not contain such an express denial of habeas jurisdiction. *Id.* at 231–32 (citing *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868)). The court noted the long tradition of allowing habeas petitions in immigration cases and concluded that the expansive language of section 1252(g) that "no court shall have jurisdiction to hear [certain immigration cases]" was not explicit enough to amount to a repeal of habeas jurisdiction under section 2241, and a repeal could not be achieved by implication. *Id.* at 237–38.

Acknowledging *Sandoval,* the Respondent argues that it is no longer valid because it was decided before *American–Arab* (about one month before) and in the latter case, the Supreme Court made clear that section 1252(g) does preclude other forms of judicial relief. We are not persuaded by this argument. First, in *American–Arab* the Court was not addressing the continued vitality of section 2241 habeas jurisdiction in deportation cases, but whether a civil suit invoking the district court's federal-question jurisdiction was viable in light of section 1252(g). As *Sandoval* makes clear, the analysis is materially different and leads to different conclusions. In fact, in *American–Arab* the Court noted in passing that the Circuit courts were split as to whether habeas remained available, *see* 525 U.S. 471, 119 S.Ct. 936, 942 n. 7, 142 L.Ed.2d at 951 n. 7, but did not consider it a factor in its analysis.

Second, in *Catney v. INS*, 178 F.3d 190, 1999 WL 330421 (3d Cir. May 25, 1999), decided after *American–Arab*, the Third Circuit reaffirmed its holding in *Sandoval* that habeas relief is available in the instant circumstances. In *Catney*, the court ruled it lacked jurisdiction to entertain the alien's claims in a petition for review under the INA and held that he must assert them in a habeas corpus petition. *Id.* at 194.

Third, in *Singh v. Reno*, 182 F.3d 504 (7th Cir.1999), the Seventh Circuit reaffirmed *LaGuerre v.. Reno*, 164 F.3d 1035 (7th Cir.1998), which, contrary to *Sandoval*, held that section 1252(g) deprives a district court of habeas jurisdiction. The court noted its disagreement with *Sandoval*, at 229 n. 2, and at the same time, acknowledged the Supreme Court's decision in *American–Arab*, but never used it to bolster its position contrary to *Sandoval*. We thus conclude that *American–Arab* has no impact on *Sandoval*.

Accordingly, we conclude that we have jurisdiction to consider Hypolite's habeas petition. Furthermore, since section 2241 extends to violations of federal law as well as the federal constitution, our scope of review includes Hypolite's statutory claims as well as his constitutional ones. *Sandoval*, 166 F.3d at 238.

■ We also note that section 1252(g) does not preclude us from enjoining Petitioner's deportation so long as he can prove that a stay should be entered. Section 1252(f)(2) permits injunctions against final removal orders if a petitioner can establish "by clear and convincing evidence" that carrying out the removal order is "prohibited as a matter of law." 8 U.S.C. § 1252(f)(2). *But see Maldonado de Leon v. INS*, No. 4:CV–99–0479 (M.D.Pa. Apr. 1, 1999) (holding that section 1252(g) deprives court of authority to grant a stay of deportation). If Petitioner can prevail on his section 2241 claims under this burden of proof, then we can enjoin the deportation while his removal is processed properly.

We turn now to the merits of the petition.

### B. *The Availability of Discretionary Review.*

The Petitioner's first argument is that the INS improperly refused to consider him for a discretionary review that might have allowed him to remain in the United States despite his conviction of an aggravated felony. We reject this contention.

■ Hypolite relies on 8 U.S.C. § 1182(h), INA § 212(h). With certain exceptions, section 1182(h) grants discretion to the Attorney General to waive deportation for aliens deportable due to their commission of certain crimes in the following circumstances:

> in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; . . . .

8 U.S.C. § 1182(h)(1)(B).

As stated in the opening language of section 1182(h), the Attorney General is authorized to grant this waiver for a controlled-substances crime specified in section 1182(a)(2)(A) (i)(II) but only "insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana . . . ."

Thus, the 1182(h) waiver provision does not apply to Hypolite because while his crime is covered by section 1182(a)(2)(A)(i)(II), it did not involve simple possession of marijuana but conspiracy to import heroin into the United States and to distribute it.

Moreover, section 1228(b)(5) specifically excludes aliens who have committed aggravated felonies and who are not permanent residents from discretionary relief. Hence, the service officer correctly refused to consider him for such relief.

C. *The Applicability of the Removal Procedure Under 8 U.S.C. § 1228(a), INA § 238(a) and Congressional Authorization For the Section 1228(b) Procedure.*

■ The Petitioner's next argument is that the INS failed to follow the procedure required by 8 U.S.C. § 1228(a), INA § 238(a), rather than the procedure actually used, the one under section 1228(b), INA § 238(b).

The Petitioner is mistaken. Section 1228(a), INA § 238(a), provides for the removal of "criminal aliens" using the procedure outlined in 8 U.S.C. § 1229a, INA § 240, "except as otherwise provided in this section." In turn, 8 U.S.C. § 1228(b), INA § 238(b), does provide otherwise, by designating a procedure for the removal of aliens, like the Petitioner, "who are not permanent residents." The proper statutory procedure was used.

Nor is the Petitioner correct in asserting that Congress did not authorize the section 1228(b) procedure the INS used in his case, found at 8 C.F.R. § 238.1. Section 1228(b)(4) imposes certain minimal procedural requirements on section 1228(b) proceedings but also authorizes the Attorney General to prescribe regulations for those proceedings as well. We need not go onto detail, but the regulations implementing section 1228(b) mirror the statutory language in material part and are not unauthorized.

D. *The Due Process Claim.*

The Petitioner contends that the section 1228(b) procedure violates procedural due process in two ways. First, by relying on an adjudicator who may be an ordinary employee of the INS it may not provide an impartial, competent or knowledgeable adjudicator. Second, it risks erroneous deportations by not allowing the alien to testify in person.

■ We reject this due process claim because the Petitioner has suffered no injury from these purported defects. Injury is an essential element of a due process claim, *see Stehney v. Perry*, 101 F.3d 925, 930–31 (3d Cir.1996), as it is of any claim. The Petitioner has pointed to no error in his adjudication, and there does not appear to be any; the Petitioner admits he committed the aggravated felony, and the INA plainly requires his removal.

In any event, his concerns appear to be unfounded. Petitioner contends that section 1228(b) proceedings violate his due process rights because they may be conducted by untrained INS employees and because the alien has no right to personally appear. Petitioner argues that legal training is necessary for an officer to determine whether an alien has committed an aggravated felony and whether his or her deportability has been established by clear and convincing evidence. *See* 8 U.S.C. § 1228(b), 8 C.F.R. § 238.1. The risk of error by the officer is quite low, however. The statute provides a detailed list of offenses that constitute an aggravated felony, *see* 8 U.S.C. § 1101(a)(43), and the regulations indicate the documents required to establish the conviction, *see* 8 C.F.R. §§ 3.41, 238.1(b)(iii). Once the aggravated felony conviction is proved, the alien is "conclusively presumed to be deportable." 8 U.S.C. § 1228(c). Thus, there appears to be little room for error on the part of the INS officer or little need for a personal appearance by the alien.

Moreover, the regulations list persons who can be deciding service officers. Those persons can be "a district director, chief patrol agent, or another immigration officer designated by a district director or chief patrol agent, who is not the same person as the issuing officer." 8 C.F.R. § 238.1(a). We can presume that any of these persons are familiar with the INA

and have the basic competence to decide a case like Hypolite's.

Accordingly, we conclude that use of the section 238(b) expedited removal procedure did not violate Petitioner's due process rights.

### E. *The Equal Protection Claim.*

■ The Petitioner also maintains that he was denied equal protection because some criminal aliens, deportable on the same basis as the Petitioner, may be placed in proceedings allowing them to seek discretionary relief while the procedure applied to Petitioner precluded him from doing so.

This claim arises from the option granted to the Attorney General by section 1228(b), INA § 238(b), to proceed with the section 1228(b) procedure or to use the procedure in 8 U.S.C. § 1229a, INA § 240, to effectuate the removal of an alien who is not a permanent resident. Parenthetically, the section 1229a procedure, in contrast to the section 1228(b) procedure, provides more protection. Under section 1229a, an alien has a hearing before an immigration judge where he may appear, be represented by counsel, present evidence on his own behalf and cross examine opposing witnesses.

The Petitioner has failed to be precise about the basis of this claim. He appears to argue that because section 1228(b)(5) specifically excludes an alien from eligibility for discretionary relief in section 1228(b) proceedings while section 1228a does not specifically foreclose such relief to a similarly situated criminal alien, his right to equal protection has been violated.

We reject this contention. As we noted above, no criminal alien convicted of Petitioner's aggravated felony, regardless of the procedural avenues open to him, is entitled to a waiver under section 1182(h), INA § 212(h). Hence, because the substantive standard applicable to such aliens remains the same, there is no equal protection violation.

### IV. *Conclusion.*

Finally, we note that Petitioner claimed in his habeas petition that he should be allowed to remain in the United States because he is a witness in a criminal trial. In his brief, he has not elaborated on this contention and appears to have dropped it as a basis for his habeas petition. In any event, he relies on a regulation, 8 C.F.R. § 235.3(b)(2)(iii), that confers discretion on the Attorney General, not a right on the alien, to parole the alien subject to a removal order if the Attorney General determines that parole is "necessary for a legitimate law enforcement objective."

Respondent's motion to dismiss will be granted, and Hypolite's habeas petition will be denied. Hypolite's motion for a stay of deportation will also be denied, and the TRO granted April 7, 1999, will be vacated.

### MEMORANDUM

### I. *Introduction.*

We are considering the timely motion of Petitioner, Franklyn Hypolite, to alter or amend our order of July 13, 1999, styled as an emergency motion to reconsider, denying his petition for a writ of habeas corpus and allowing the INS to deport him to his native Trinidad or some other appropriate country. The memorandum explaining the order, *Hypolite v. Blackman*, 57 F.Supp.2d 128 (M.D.Pa.1999), provides sufficient factual and legal background except for a few facts we will add in the course of our discussion. We will proceed directly to the Respondent's renewed jurisdictional argument and the errors the Petitioner asserts we made.

### II. *Discussion.*

### A. *Jurisdiction.*

In opposing the reconsideration motion, the Respondent renews his argument that we lack jurisdiction to entertain the habeas petition, citing in support *Richardson v.*

*Reno,* 180 F.3d 1311 (11th Cir.1999), and *Edwards v. Blackman,* 56 F.Supp.2d 508 (M.D.Pa.1999).

The circuits are split as to whether the 1996 amendments to federal immigration law divested district courts of habeas jurisdiction over challenges to deportation orders. In *Sandoval v. Reno,* 166 F.3d 225, 231 (3d Cir.1999), the Third Circuit held that habeas survived those amendments, under its view that any statutory deprivation of habeas relief had to specifically mention habeas. The court of appeals followed *Sandoval* in *Catney v. INS,* 178 F.3d 190 (3d Cir.1999). We followed both of these cases in deciding that we had jurisdiction.

After *Sandoval* but before *Catney,* the Supreme Court issued *Reno v. American–Arab Anti–Discrimination Committee,* — U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), holding that 8 U.S.C. § 1252(g), INA § 242(g), precluded a civil action seeking an injunction against the commencement of deportation proceedings. As part of our decision that we had jurisdiction, we had noted that in *Catney* the Third Circuit had not altered its ruling that habeas survived the 1996 amendments even though it had been decided after *American–Arab.* We also noted that in *Singh v. Reno,* 182 F.3d 504 (7th Cir.1999), the Seventh Circuit, while reaffirming a previous jurisdictional ruling contrary to *Sandoval,* mentioned *Arab–American* but never used it to bolster its position contrary to *Sandoval.*

The Respondent's citation to *Richardson* and *Edwards* is an attempt to meet this reasoning because in both cases the courts relied on *American–Arab* to buttress their conclusion that aliens could no longer invoke habeas. *Edwards* cited it specifically as a reason not to follow *Sandoval.*

We suppose the issue of whether an immigrant can still seek habeas relief after the 1996 changes to immigration law will be settled at some point. However, we already considered the effect of *Ameri-*

*can–Arab* on *Sandoval* in our previous memorandum, and we adhere to our original ruling.

The Respondent has also argued that *Sandoval* and *Catney* are distinguishable because they dealt with the so-called transitional rules and Hypolite's case was decided under the so-called permanent rules. *See Sandoval,* 166 F.3d at 229 (noting the existence of the two sets of rules). In *Richardson, supra,* the court did consider this distinction significant. However, in deciding *Sandoval,* the Third Circuit did not. *See also Abdel–Fatah v. Reno,* No. 3:99–CV–0947, slip op. at 4 n. 3 (M.D. Pa. June 28, 1999) (Vanaskie, J.) (rejecting transitional nature of rules at issue in *Sandoval* as relevant to *Sandoval*'s application to cases involving the permanent rules).

Finally, because Petitioner is seeking a waiver under 8 U.S.C. § 1182(h), INA § 212(h), the Respondent relies on the last sentence of subsection 1182(h) which provides: "[N]o court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection." (Brackets added). The problem with relying on this provision is that the INS did not exercise its authority to deny a waiver. Indeed, as the Petitioner repeatedly points out, it took the position that the waiver provision simply did not apply to Hypolite. The Petitioner is claiming that this interpretation of the statute is erroneous and wants the agency to exercise its decision-making power under the waiver provision. Hence, since no section 1182(h) decision to grant or deny a waiver is being contested here, only whether the INS should make such a decision in the first place, the last sentence of that section does not operate to preclude our jurisdiction.

B. *The Availability of Discretionary Review Under 8 U.S.C. § 1182(h), INA § 212(h).*

In our original memorandum, we decided that the Petitioner was not eligible for a

section 1182(h) waiver. Petitioner argues that we erred, characterizing our position as one in which he "could only obtain a discretionary waiver under INA 212(h) [section 1182(h)] upon a showing that he was convicted for a single offense of simple possession of 30 grams of marijuana . . . ." (Petitioner's supplemental brief at p. 3)(brackets added). Hypolite points out that a waiver is available for other offenses as well and cites *In re Michel*, Interim Decision 3335, 1998 WL 40407 (BIA Jan. 30, 1998), as a case where the Board of Immigration Appeals (BIA) held that an immigrant, like Hypolite, who was not a permanent resident alien, could seek a waiver under section 1182(h) after having committed an aggravated felony. We reject this contention.

Petitioner mischaracterizes our position and our understanding of section 1182(h). We were well aware, as section 1182(h) specifies, that a hardship waiver is available for a spouse or parent of a citizen for crimes other than "a single offense of simple possession of 30 grams or less of marijuana." That possibility is made clear by the caption and the first sentence of section 1182(h), which read as follows:

(h) Waiver of subsection (a)(2)(A)(i)(I), (II), (B), (D), and (E)

The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (II), (B), (D), and (E) of this subsection (a)(2) and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams of marijuana . . . .

The difficulty for the Petitioner is that, as the Respondent points out, only subparagraph (A)(i)(II) would apply to his crime since that subparagraph deals with a violation of the drug laws of any country (including a conspiracy) for a controlled substance as defined in 21 U.S.C. § 802. However, as subparagraph 1182(h) provides, a waiver is available only for a drug offense involving "a single offense of simple possession of 30 grams of marijuana."

In contrast, the Petitioner's crime, to which he pled guilty, was a conspiracy to import heroin and possess heroin with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 952(a).

The other subparagraphs of section 1182(a)(2) do not apply. Subparagraph (A)(i)(I) deals with crimes of moral turpitude, subparagraph (B) deals with multiple criminal convictions with an aggregate sentence of five years or more, subparagraph (D) deals with prostitution and commercialized vice, and subparagraph (E) with certain crimes in which the alien invoked immunity from prosecution.

Petitioner cites *In re Michel, supra*, in his support, but that case is easily distinguishable. In *In re Michel*, the BIA did rule that an immigrant lawfully in the country, but not a permanent resident alien, who had committed an aggravated felony subjecting him to deportation was entitled to seek a hardship waiver under section 1182(h). However, his crimes were classified as ones of moral turpitude under subsection (A)(i)(I). As noted above, this type of crime does not disqualify an immigrant from seeking a hardship waiver.

Moreover, although Petitioner insists that his aggravated felony does not bar him from seeking such a waiver, he does not assert what subparagraph his crime does come under and why it would not be covered by subparagraph (A)(i)(II).

C. *Whether Petitioner's Case Should Have Proceeded Under 8 U.S.C. § 1228(b), INA § 238(b), or Under 8 U.S.C. § 1229a, INA § 240.*

The Petitioner next argues that we decided that the INS could only adjudicate his case under the "expedited administrative removal proceedings" of 8 U.S.C. § 1228(b), INA § 238(b), rather than use proceedings authorized by 8 U.S.C. § 1229a, INA § 240. As we noted in our original memorandum, section 1228(b) proceedings are decided on written submissions by a "deciding service officer" and

section 1229a proceedings are decided on oral hearings by an immigration judge. In Petitioner's view, we saw section 1228(b) proceedings as mandatory, rather than as optional, thereby frustrating Congressional intent that the INS exercise discretion as to which proceeding is appropriate for each case. He asserts that his case is the type of case that should have been heard before an immigration judge, not an INS service officer.

The Petitioner is wrong as to our interpretation of the nature of section 1228(b) proceedings. We do not view them as mandatory, and as the respondent asserts, we recognized that in our original memorandum. When we were discussing the equal protection claim, we noted that section 1228(b), INA § 238(b), gave the Attorney General the "option" to proceed with either the section 1228(b) procedure or the section 1229a procedure. *Hypolite, supra,* — F.Supp.2d at ——, 1999 WL 499146 at *7. Ironically, the portion of our memorandum the Petitioner attacks as supposedly adopting the view that the section 1228(b) procedure is mandatory, *id.* at ——, 1999 WL 499146 at *5, was a rejection of the Petitioner's claim that the INS was required to use the section 1229a procedure, a position inconsistent with the Petitioner's current stand that the INS has a choice between the two procedures.

As part of this argument, the Petitioner contends that the INS did not properly exercise its discretion to use section 1228(b) proceedings rather than section 1229a proceedings. He asserts the INS should have "screened out" his case for a hearing before an immigration judge, that it "is precisely the type that Congress anticipated that the Respondent would and should refer to an immigration judge," (supplemental brief at p. 5), and that if the Respondent "had reviewed Petitioner's case in accord with legal precedent," citing *In re Michel, supra,* Respondent would have found "a sufficient legal basis" to proceed under section 1228a. (*Id.* at p. 6).

Except for the citation to *In re Michel,* Petitioner is not specific about what should have led the Respondent to decide that his case should have been decided in section 1229a proceedings. (He presents other possible grounds in later sections of his supplemental brief, but as we will show below, these grounds have no merit.) *In re Michel* is distinguishable. First, it is silent on the criteria to be used on how it should be decided when a case should go to section 1229a proceedings as opposed to section 1228(b) proceedings. Second, unlike here, the case did have to deal with the section 1182(h) hardship waiver, a discretionary authority that probably depended on live testimony for its proper exercise. Here on the other hand, far from being the prototypical case for section 1229a proceedings, Hypolite's case appears to be perfectly suited for the "expedited administrative removal proceedings" of 8 U.S.C. § 1228(b) since he cannot dispute any of the factual or legal bases of his deportation. First, the Petitioner's guilt of the offense is a matter of record; Hypolite pled guilty to the federal offense of conspiracy to import heroin and possess heroin with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 952(a). Second, this offense constitutes an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B) which makes him removable under 8 U.S.C. § 1227(a)(2)(A)(iii), INA § 237(a)(2)(A)(iii). Third, the Petitioner cannot seek a hardship waiver under section 1182(h) because, as a matter of law, his crime is not one of those specified in the first sentence of the subsection 1182(h) as one for which a waiver can be sought.

### D. *The Due Process Claim.*

In our original memorandum, we had determined that Hypolite had no due process claim for the following two reasons. First, he could show no injury from the INS's conduct because he could point to no error in the administrative adjudication of his case. In other words, his complaints were all about the procedure used and not

about the correctness of the ultimate conclusion—that he was removable as an alien who had committed an aggravated felony. Second, section 1228(b)'s expedited administrative removal procedure provided adequate process, even with the use of INS service officers as adjudicators.

Hypolite attacks our determination. He first contends that he has shown injury because Respondent failed to abide by BIA decisions that would have required him to hold a section 1229a proceeding, apparently a reiteration of the arguments we discussed above. He also contends that "there is a question" about whether his conviction is an aggravated felony because he was sentenced to only six months imprisonment and six months of monitored home detention. Relying on 18 U.S.C. § 3559 (incorrectly identified as § 1351), he argues that for a felony to qualify as an aggravated felony it must be a felony under federal law, which in turn requires a sentence of imprisonment in excess of one year. Finally, he argues that what constitutes an aggravated felony is a "hotly debated area of immigration law," citing as his lone example whether an offense under state law that would qualify as an aggravated felony under state law, but not under federal law, could nonetheless be the basis of removal proceedings. *See United States v. Restrepo–Aguilar*, 74 F.3d 361 (1st Cir.1996). He maintains that this final argument, which supposedly raises the possibility of complex issues to be resolved, required "conversion" of the proceeding to one before an immigration judge.

We have already rejected Petitioner's contention that BIA decisions and agency regulations required that section 1229a proceedings be held, so no injury can be claimed from the decision to use section 1228(b) proceedings. We note that Petitioner's emergency motion to reconsider also argues that injury results because he will be deported and separated from his wife and child. However, those consequences are not the result of any due process violation in the agency proceedings but the consequences of Petitioner's decision to violate federal law.

▮▮▮ We also reject his contention that the actual sentence imposed must be more than one year to qualify as a federal felony and hence as an aggravated felony. In 8 U.S.C. § 1101(a)(43)(B), an aggravated felony is defined to include a *drug trafficking crime* defined in 18 U.S.C. § 924(c). Section 924(c)(2) defines such a crime as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.) . . . ." Thus, the felony need not have actually resulted in a sentence in excess of one year, just be "punishable" as a federal felony.

The Petitioner's conviction meets this requirement. As noted in exhibit 4 to the Respondent's motion to dismiss, Hypolite's offense had a federal sentencing guideline of 57 to 71 months imprisonment, well in excess of one year, and only resulted in six months of incarceration (and six months of home confinement) because the government moved for a downward departure under U.S.S.G. § 5K1.1. *See also In re Davis*, Interim Decision 3181, 1992 WL 443920 (BIA May 28, 1992)(ruling that a felony under federal law was a crime punishable by a maximum term of imprisonment in excess of one year).

Finally, we are not persuaded by the Petitioner's argument concerning the supposedly complex nature of the determination of what constitutes an aggravated felony. Petitioner was convicted under federal law, so it was a simple matter to determine it was an aggravated felony.

In any event, it does not follow from the last two arguments that the Respondent had a due process obligation to proceed under section 1229a before an immigration judge. Again, we note that the Petitioner's case does not involve any disputed issues of fact. Any legal issues concerning what constitutes an aggravated felony

could be taken up to the Third Circuit on judicial review under 8 U.S.C. § 1252 by way of 8 U.S.C. § 1228(b)(3).

### E. *The Equal Protection Claim.*

The Petitioner argues that our rejection of his equal protection claim is erroneous. His claim was that it violated equal protection for the Respondent to put aliens like him into section 1228(b) expedited administrative proceedings and other supposedly similarly situated aliens into section 1229a proceedings before immigration judges.

His first reason is based on his previous contentions that his federal offense is in fact not an aggravated felony and that he is entitled to seek a hardship waiver under section 1182(h). We have already rejected both of these contentions.

His next argument is that since other aliens may be placed in section 1229a proceedings, and since these proceedings do not foreclose an immigrant from seeking a hardship waiver, Hypolite has been denied equal protection. However, as we explained in our original memorandum, the substantive standard governing when an immigrant may obtain a hardship waiver applies in both proceedings, so there is no denial of equal protection.

·The Petitioner next argues that the governing standard for deciding when a case like Hypolite's should go into section 1229a proceedings is too vague. Under 8 C.F.R. § 238.1(d)(2)(iii), those proceedings can be used when the deciding officer finds that the alien is "not amenable to removal" under section 1228(b). The Petitioner asserts that it is "anyone's guess" what the phrase "not amenable to removal" means and hence will result in similarly situated aliens being placed in different proceedings.

This is another abstract argument that has no bearing on the outcome of the Petitioner's case. Again, Hypolite does not specify why Respondent should have exercised his discretion to put him into section 1229a proceedings and how his re-fusal to do so altered the outcome of his case.

Lastly, the Petitioner asserts that his right to equal protection was violated by his not being placed in section 1229a proceedings because it prevented him from seeking adjustment of his status under 8 U.S.C. § 1255, INA § 245. This argument is premised on the Petitioner's assertion that he has not committed an aggravated felony. However, as established above, Hypolite has committed such a felony. In any event, he is not eligible for adjustment of his status to permanent resident alien. Adjustment of status requires that the alien be admissible to the United States. 8 U.S.C. § 1255(a)(2). Petitioner is not admissible because he has committed an offense designated in section 1182(a)(2)(a)(i)(II) as a controlled-substances offense that is not waivable under section 1182(h) because it was not simple possession of 30 grams or less of marijuana.

### F. *Parole Based On Being a Witness in a Criminal Trial.*

■ The Petitioner's final argument is that he is entitled to seek parole under 8 C.F.R. § 235.3(b)(2)(iii) as a witness in the criminal trial of his co-conspirator. Although Hypolite has already testified and the co-conspirator has already been convicted, Hypolite asserts that the conviction has been appealed, and he may have to testify at a retrial if the conviction is reversed.

Hypolite is wrong. As we noted in our original memorandum, section 235.3(b)(2)(iii) confers discretion on the Attorney General to parole an alien subject to a removal order if the Attorney General determines that parole is "necessary for a legitimate law enforcement objective." It confers no right on the alien witness to remain in the country if his testimony is needed at a criminal trial.

We have examined the Petitioner's other contentions. They have no merit.