Charles Michel JACQUES, Petitioner,

v.

Janet RENO, U.S. Attorney General; Doris Meissner, INS Commissioner; and Scott Blackman, District Director, Respondents.

No. 4:CV–99–1259.

United States District Court, M.D. Pennsylvania.

Oct. 29, 1999.

Charles Michael Jacques, pro se.

Kate L. Mershimer, Assistant United States Attorney, United States Attorney's Office, Harrisburg, PA, for respondents.

### *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

Once again, we are asked to address the question of whether U.S. district courts have jurisdiction over habeas corpus petitions related to detention of aliens during deportation proceedings. We have addressed this question previously. *Edwards v. Blackman* ["*Edwards I*"], 48 F.Supp.2d 477 (M.D.Pa.1999) (finding that district court lacked jurisdiction under 28 U.S.C. § 2241 to review decision of INS to deny release on bond pending deportation proceedings); *Edwards v. Blackman* ["*Edwards II*"], 56 F.Supp.2d 508 (M.D.Pa. 1999) (denying motion for reconsideration). We adhere to our previously expressed view, and will examine the question in detail to address the numerous opinions

which have been expressed to the contrary.

On July 19, 1999, petitioner Charles Michel Jacques, an INS detainee being held at the Snyder County Prison, Selinsgrove, Pennsylvania, commenced this action with the filing of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. According to the petition, Jacques is a native of Haiti who has resided in the United States since September 6, 1984; he became a lawful permanent resident on December 1, 1989.

On September 12, 1997, Jacques was convicted in the United States District Court for the Eastern District of Michigan of possession with intent to distribute cocaine, and sentenced to a period of incarceration of 36 months. As a result of the controlled substance conviction, the INS has determined that Jacques is deportable under 8 U.S.C. § 1227(a)(2)(B)(i), despite a plea agreement whereby the government recommended that Jacques not be deported.

An immigration judge determined that the conviction was for a particularly serious crime that barred Jacques from withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii). On February 17, 1999, the immigration judge ordered Jacques deported to Haiti.

On appeal, the Board of Immigration Appeals (BIA) reversed, concluding that the record did not support a finding that Jacques had been convicted of a particularly serious crime. On July 9, 1999, the BIA remanded to the immigration judge so that Jacques could apply for withholding of removal.

During the proceedings before the immigration judge and the BIA, Jacques has been detained. He filed the instant petition shortly after remand by the BIA alleging that he was being held indefinitely, in violation of his substantive due process rights. Jacques is proceeding *pro se.* According to Jacques' objections to the report and recommendation, the immigration judge has denied his application for withholding of removal and entered an order of deportation.

Before the court is the report and recommendation of U.S. Magistrate Judge J. Andrew Smyser, which recommends that the petition be dismissed for failure to exhaust administrative remedies. In so recommending, Magistrate Judge Smyser specifically concluded that the court has jurisdiction, despite the recent amendments to the Immigration and Nationality Act.

### DISCUSSION:

#### I. STANDARD

A district court is required to review de novo those portions of a magistrate judge's report to which objections are made. *Commonwealth of Penna. v. United States,* 581 F.Supp. 1238, 1239 (M.D.Pa.1984); 28 U.S.C. § 636(b)(1). When no objections are filed to the report of a magistrate judge, a court has discretion to review that report as it deems appropriate. A magistrate judge's finding or ruling on a motion or issue properly becomes the holding of the court unless objections are filed. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). However, the district court may not grant a motion for summary judgment, Fed.R.Civ.P. 56, or a motion to dismiss under Fed.R.Civ.P. 12(b)(6) solely because the motion is unopposed; such motions are subject to review for merit. *Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Associates v. Virgin Islands Board of Tax Review,* 922 F.2d 168, 174 (3d Cir.1990).

Jacques has filed objections to the report and recommendation which relate to the failure to exhaust administrative remedies. Because we find that we lack jurisdiction, we do not address the objections. They will, however, be overruled as moot.

#### II. STATUTES AT ISSUE

The government argued before the magistrate judge that the court lacks jurisdic-

tion to hear the petition. The relevant statutory provisions read:

### (c) Detention of criminal aliens

#### (1) Custody

The Attorney General shall take into custody any alien who—

**(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. . . .

### (e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(c)(1), (e).

As we noted in *Edwards I:*

To comprehend this [issue] fully, it is necessary to examine the interplay of a number of other provisions, specifically the 'Transition Period Custody Rules' (TPCR) enacted by § 303(b)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), enacted as Division C of the Departments of Commerce, Justice, and State, and the Judiciary Appropriations Act for 1997, Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). The TPCR were temporary rules which could be invoked at the discretion of the Attorney General to defer the effective date of amendments to the INA under IIRIRA and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, 1277 (Apr. 24, 1996). The Attorney General invoked the TPCR for both of the 1–year periods for which they were available. The current provisions, quoted above, therefore did not become effective until October 9, 1998.

Under IIRIRA § 303(b)(3)(A), the Attorney General was required to take into custody certain classes of aliens, including aliens convicted of aggravated felonies and controlled substances offenses. Under IIRIRA § 303(b)(3)(B), such an alien could be released only if the alien (1) was lawfully admitted, or was not lawfully admitted but could not be removed because the country of removal would not accept the alien, (2) would not pose a danger, and (3) was not a flight risk.

*Edwards I* at 479.

## III. CONTROLLING PRECEDENT

The Supreme Court of the United States has reviewed one provision of IIRIRA and found that it precluded jurisdiction in the specified areas. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). In that case, the petitioners had brought an action in district court in 1987, after the INS instituted deportation proceedings against them. 119 S.Ct. at 939. The case made several trips to the Court of Appeals for the Ninth Circuit, during which time AEDPA and IIRIRA were enacted. 119 S.Ct. at 939–940. As summarized by the Supreme Court:

While the Attorney General's appeal of this last decision was pending, Congress passed IIRIRA which, *inter alia,*

repealed the old judicial-review scheme set forth in [8 U.S.C.] § 1105a and instituted a new (and significantly more restrictive) one in 8 U.S.C. § 1252. The Attorney General filed motions in both the District Court and the Court of Appeals, arguing that § 1252(g) deprived them of jurisdiction over respondents' selective-enforcement claim. The District Court denied the motion, and the Attorney General's appeal from that denial was consolidated with the appeal already pending in the Ninth Circuit. 119 S.Ct. at 940.

The statutory provision at issue reads:

**(g) Exclusive jurisdiction**

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Court engaged in a lengthy discussion of this provision, along with its interaction with several others. However, as relevant here, the Court concluded that § 1252(g) eliminated jurisdiction in the courts, including in pending cases, of the specified decisions of the Attorney General, i.e. to "commence proceedings, adjudicate cases, or execute removal orders." 119 S.Ct. at 945. It also is important to note that the Supreme Court interpreted § 1252(g) narrowly because a broader interpretation would have rendered the effective date provision, IIRIRA § 309(c)(1), a nullity. 119 S.Ct. at 941–943. *See also DeSousa v. Reno,* 190 F.3d 175, 182–83 (3d Cir.1999) (summarizing *American–Arab* ).

The magistrate judge relied on *Sandoval v. Reno,* 166 F.3d 225 (3d Cir.1999), in recommending that we find jurisdiction. In *Sandoval,* the Third Circuit held that the absence of specific language repealing habeas jurisdiction under § 2241 means that federal courts continue to have the authority to entertain petitions for habeas

corpus brought by aliens challenging deportation orders. Important in the analysis was the fact that Congress stated that there is to be no "judicial review" but did not preclude "writs of habeas corpus." *Sandoval* at 235. Also important is the fact that *Sandoval* predates *American–Arab.*

Obviously, *Sandoval* does not square with *American–Arab.* The Supreme Court held that habeas review had been repealed, albeit in a narrow line of cases, and the statutory provision accomplishing the repeal does not specify "habeas corpus jurisdiction." Thus, the entire rationale of *Sandoval* is undermined by the holding in *American–Arab.* That is, it is *not* necessary for Congress to specify that it is repealing habeas jurisdiction for the language to be sufficiently clear to deprive courts of jurisdiction under § 2241.

The Third Circuit returned to the immigration arena in *Catney v. Immigration and Naturalization Service,* 178 F.3d 190 (3d Cir.1999). In that case, the Third Circuit held that it did not have jurisdiction over a petition for review of an order of deportation of a criminal alien which involved the denial of discretionary relief. *Id.* at 195–196. While the Third Circuit noted that, under *Sandoval,* federal courts continue to have habeas corpus jurisdiction of certain deportation orders, thereby avoiding constitutional problems with its statutory interpretation, *Catney* at 195, there was no discussion of *American–Arab.* *See also Edwards II,* 56 F.Supp.2d at 512 n. 5 (noting lack of discussion of *American–Arab* in *Catney* ).

The Third Circuit's next pronouncement related to IIRIRA is *DeSousa v. Reno,* 190 F.3d 175 (3d Cir.1999), a case which presents us with a number of problems.

First, the Third Circuit interpreted *American–Arab* as holding that § 1252(g) "only applies to suits challenging the government's selective enforcement of the immigration laws ..." *DeSousa* at 182. However, the Supreme Court held that review was barred for "three discrete actions that

the Attorney General may take," *American–Arab*, 119 S.Ct. at 943, referring to decisions or actions to commence proceedings, adjudicate cases, or execute removal orders. The Court characterized the selective enforcement claim as one challenging the Attorney General's decision to "commence proceedings," 119 S.Ct. at 945, and not as one of the other two potential decisions or actions. Moreover, while the Supreme Court indicated that § 1252(g) applied to a "narrow class of cases," *DeSousa* at 182, and *American–Arab* was a claim of selective enforcement, the Supreme Court did not state that only selective enforcement claims were within the narrow class.

More importantly, the Third Circuit stated in *DeSousa* that *Sandoval* remains the law governing claims such as that asserted by the petitioner, i.e. of equal protection violations, because § 1252(g) did not apply to the claim and because "*American–Arab* did not affect the remainder of *Sandoval*'s rulings ..." *DeSousa* at 183. We are unable to understand how that can be.

■ A decision of the Supreme Court of the United States has two components, the reasoning (*ratio decidendi* ) and the result. Lower courts are bound by both components of the decision. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 947 F.2d 682, 691–692 (3d Cir.1991), *aff'd in part and rev'd in part on other grounds*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F.Supp. 981, 984–985 (E.D.Pa. 1994). The reasoning of *American–Arab* includes a determination that jurisdiction in habeas corpus actions involving deportation matters had been restricted by the enactment of AEDPA and IIRIRA. *See American–Arab* at 938 (IIRIRA "contains a provision restricting judicial review ..."). As the Court pointed out, one of the main purposes of IIRIRA was to restrict judicial intervention into what Congress viewed as a matter for the Executive Branch: "Of course many provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts-indeed, that can fairly be said to be the theme of the legislation." 119 S.Ct. at 945 (citations to other provisions of IIRIRA limiting or barring judicial review omitted).

■ We therefore conclude, as we did in *Edwards*, that *American–Arab* compels a conclusion that the provisions of IIRIRA which bar judicial review prevent the assertion of habeas jurisdiction under § 2241 as well. Since § 1226(e) is one of those sections, it bars habeas review of decisions by the INS to detain or release any alien, or to grant, revoke, or deny release on bond or parole.

Of course, this conclusion gives rise to the question of whether we are contradicting decisions of our own Court of Appeals. In *Loftus*, for example, Judge Robreno faced the problem of whether *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), overruled prior decisions of the Third Circuit. Because the *ratio decidendi* of *Leatherman* was plainly contrary to Third Circuit law, Judge Robreno was "bound to recognize" that "Third Circuit precedent ha[d] been squarely overruled by an opinion of the Supreme Court." *Loftus* at 984.

Fortunately, we are not faced with such a dilemma. *DeSousa* involved an application for a discretionary waiver of inadmissibility under 8 U.S.C. former § 1182(c). While the Third Circuit concluded that the district court had jurisdiction to hear the claim under § 2241, it added the caveat that the case it was considering involved a petition filed before IIRIRA's effective date. *DeSousa* at 178–79. In *Catney* and *Sandoval*, the Third Circuit was reviewing the transitional rules, as well, so that different provisions were at issue.

To the extent the *ratio decidendi* of *DeSousa, Catney,* and *Sandoval* may be said to be contrary to our reasoning, we believe that we are bound to follow *American–Arab* and that our reasoning is consis-

tent with the Supreme Court's *ratio decidendi. Cf. Guy v. Reno,* 1999 WL 718554, at *4–*5 (E.D.Pa. Sept.2, 1999) (finding that district courts are divested of habeas corpus jurisdiction under IIRIRA but reconciling conclusion with *Catney* and *De-Sousa*).

### III.  OTHER DECISIONS

In *Edwards II,* we addressed an argument relating to the number of courts which have found jurisdiction under § 2241.  Certainly, the undersigned judge is in the minority on this issue, and there is disagreement within this judicial district.  *See United States v. Ayeni,* 66 F.Supp.2d 617, 619–21 (M.D.Pa.1999) (Caldwell, J.; finding jurisdiction over a claim, raised in the context of criminal prosecution for failing to comply with a final order of removal, that order was invalid); *Hypolite v. Blackman,* 57 F.Supp.2d 128, 130–132 (M.D.Pa.1999) (Caldwell, J.; finding jurisdiction over an administrative order of removal).  In *Edwards II,* we addressed some of the arguments and opinions contrary to our own, but did so in a summary fashion.  We therefore will do so again, with more explanation.

In *Hypolite,* Judge Caldwell indicated that the Supreme Court was not addressing habeas jurisdiction in *American–Arab,* but that its analysis was limited to consideration of whether a civil suit invoking federal question jurisdiction was viable. *Hypolite* at 131.  *But see Guy,* 1999 WL 718554, at *4 (apparent from straightforward reading of statutory provisions that Congress has vested exclusive jurisdiction over final removal order in courts of appeals, thus barring action in district court under § 2241).  Actually, the Court noted that § 1252(g) was intended to protect discretionary determinations from judicial review, and included in this part of its analysis several cases in which courts "relied on other jurisdictional statutes [i.e. other than 8 U.S.C. former § 1105a] to permit review."  119 S.Ct. at 944.  Included in those cases was *Ramallo v. Reno,* 114 F.3d 1210 (D.C.Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 1139, 143 L.Ed.2d 207 (1999), in which the court determined that no constitutional problem (i.e. suspension of the writ of habeas corpus) was presented in the case because habeas review was available.  The Court then added, "Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *American–Arab* at 944 (footnote omitted).  *See also Guy,* 1999 WL 718554, at *4 (to same effect).  In other words, § 2241 was one of the "other jurisdictional statutes" against which Congress protected INS decisions when it enacted a comprehensive statutory scheme which itself provides the only avenues of judicial relief available, if at all.

We recognize that the case before the Court in *American–Arab* was an appeal of a civil action, not a petition for a writ of habeas corpus.  However, the governing rule of law was that judicial review in all its forms is barred under IIRIRA unless some provision of IIRIRA (or subsequent amendment thereto) provides a form of review.  Thus, there was no jurisdiction over the civil case, because it fit into the category of decisions or actions over which review was barred.  In the same way, if an action is brought under another statutory source of jurisdiction, including § 2241, but fits into a category of actions or decisions over which review is barred, there is no principled way to distinguish *American–Arab. See generally Planned Parenthood* at 691–692 (courts must adhere both to results of Supreme Court cases as well as explications of governing rules of law; further citations omitted).

The most common theme running through the cases finding that IIRIRA did not revoke jurisdiction under § 2241 is that finding no habeas jurisdiction would be tantamount to a "suspension of the writ" in violation of the Suspension Clause,

U.S. CONST. art. I, § 9, cl. 2. We addressed this question in *Edwards II:*

> Last, the courts considering these issues seem to have a great reluctance to conclude that habeas jurisdiction has been revoked because of a potential problem of constitutional dimension, violation of the Suspension Clause. U.S. CONST. art. I, § 9, cl. 2. These courts do not address the larger question of just when it is that the writ of habeas corpus is "suspended" by a jurisdictional limit applicable to the lower federal courts. As discussed above, the district courts and the courts of appeals are statutory, not constitutional, creations, subject to the whim of Congress regarding jurisdiction and, for that matter, their existence. If those courts did not exist, it would be left solely to the Supreme Court of the United States to exercise judicial authority and fulfill judicial responsibility. The Supreme Court has the authority to issue the writ of habeas corpus in its own right. *See* 28 U.S.C. § 1651(a) (vesting authority to issue extraordinary writs, including habeas corpus, in Supreme Court); S.Ct.R. 20.4 (relating to procedure for obtaining original writ of habeas corpus in Supreme Court); *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (Title I of AEDPA did not preclude Supreme Court from entertaining application for habeas relief). It would be when the Supreme Court is divested of its authority to issue the Great Writ that the Suspension Clause is violated, *Felker* at 838, 116 S.Ct. 2333, not the lower federal courts.

*Edwards II* at 512–513. *See also Guy,* 1999 WL 718554, at *4 (habeas review in Supreme Court presumably still available; also citing *Felker* ).

Given (1) plain statutory language (2) as interpreted by the Supreme Court, (3) with further guidelines provided by the Court, and (4) the lack of a problem of constitutional dimensions, we fail to see how, within the dictates of logic and rationality, we can conclude otherwise than to find that we lack jurisdiction to entertain petitions under § 2241 for claims arising from the Immigration and Nationality Act, as recently amended.

## V. APPLICATION TO JACQUES' PETITION

The petition in this case may be read in two ways. First, Jacques alleges that he is being held indefinitely and without due process. This allegation makes no sense, however, as Jacques also alleges that his case is before the INS. The holding of an alien during deportation proceedings simply does not amount to indefinite detention. Moreover, such detention does not violate an alien's due process rights absent a failure to provide the form of review described in *Chi Thon Ngo v. INS,* 192 F.3d 390 (3d Cir.1999). Jacques does not, and at this point cannot, allege such a failure.

The only other plausible reading of the petition is as a challenge to the denial of release on bond during the deportation proceedings. As we held in *Edwards,* and have explicated above, we lack jurisdiction to entertain such a claim due to the enactment of § 1226(e). The only exception is an allegation of a due process violation, an issue which also was resolved in *Edwards I,* 48 F.Supp.2d at 480–481 (quoting *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999)).

## VI. CONCLUSION

The report and recommendation of the magistrate judge will not be adopted as the holding of the court. We lack jurisdiction over Jacques' claim in the only reasonable manner in which the petition can be read, and the petition will be dismissed on that basis.

An order consistent with this memorandum will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The report and recommendation (record document no. 6) of the magistrate judge is not adopted as the holding of the court.

2. The petition (record document no. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is dismissed for lack of subject matter jurisdiction.

3. Based on the widespread disagreement among the courts concerning jurisdiction under IIRIRA, we certify pursuant to 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b), the appealability of the following issue:

> Does a U.S. district court have jurisdiction under 28 U.S.C. § 2241 to entertain a petition for a writ of habeas corpus by an alien relating to the denial of release on bond or parole during deportation proceedings?

4. Jacques' objections (record document no. 7) to the report and recommendation are overruled as moot.

5. The clerk is directed to close the file.